**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

OSAMA ABDELHAMID,

            *Plaintiff*,

    v.

LANE CONSTRUCTION CORPORATION,

            *Defendant*.

</td><td>

Civil Action No. 23-2472 (LLA)

</td></tr>
</table>

<u>**MEMORANDUM OPINION AND ORDER**</u>

      Plaintiff Osama Abdelhamid, proceeding pro se, brings this action against his former employer, Defendant Lane Construction Corporation ("Lane"), alleging discrimination on the basis of national origin and retaliation.  ECF No. 1.  Lane moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  ECF No. 3.  For the reasons explained below, the court will **GRANT** in part and **DENY** in part Lane's motion.

### I.      Factual Background

      The court must consider "a *pro se* litigant's complaint 'in light of' all filings," *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)), including any "affidavits and exhibits . . . filed by a *pro se* litigant [that] were intended to clarify the allegations in the complaint," *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 529 (D.C. Cir. 2015).  Here, the complaint itself alleges very little, but it references seven attached exhibits.  Reading these filings together, Mr. Abdelhamid alleges the following facts, which this court must accept as true at the motion-to-dismiss stage.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Mr. Abdelhamid worked for Lane Construction Corporation as a Contracts Manager from July 19, 2021 to February 25, 2022.[1]  ECF No. 1-2, at 2-3.[2]  He "was born in Kuwait, lived in Egypt most of his life, and practices the Muslim faith."  *Id.* at 24.

In November 2021, Lane was in the midst of settling a contract dispute with a supplier.  *Id.* at 16, 34-36.  Mr. Abdelhamid sent his colleagues an email stating that he believed the proposed settlement agreement would expose Lane to liability under the False Claims Act, 31 U.S.C. §§ 3729-3733.  *Id.* at 2, 16, 35-36.  Lane's Assistant General Counsel disagreed, explaining that nothing in the settlement would constitute or lead to a false claim—rather, "the settlement represents the resolution of disputed claims between the parties."  *Id.* at 34.

In late January 2022, Mr. Abdelhamid sent an email to colleagues expressing his disagreement with another decision the company had made about its legal strategy.[3]  *Id.* at 2, 42. Lane's Area Vice President of Construction, Daniele Nebbia, responded to the email and stated that Mr. Abdelhamid's tone was "unacceptable."  *Id.* at 2-3, 41, 46.  The following day, Mr. Abdelhamid met with his supervisor, Fabio Ciciotti, Human Resources Corporate Manager Suaydy Canales, and Mr. Nebbia.  *Id.* at 2.  Mr. Nebbia requested that Mr. Abdelhamid take two online courses in communication skills.  *Id.* at 2.  Mr. Abdelhamid had previously received positive feedback from supervisors about his communication skills and "would often 'ghostwrite' emails that his supervisors and colleagues dispatched verbatim to others."  *Id.* at 23.  "There was no

---

[1] Some of the exhibits to the complaint also refer to Mr. Abdelhamid as "Osama Karam" or "Mr. Karam."  Per Lane, "Mr. Abdelhamid used the surname Karam at Lane."  ECF No. 1-2 at 15.

[2] When citing ECF No. 1, the court uses the page numbers generated by CM/ECF.

[3] The November 2021 and January 2022 legal disputes were unrelated.  *See* ECF No. 1-2, at 34-44.

2

material difference in [Mr. Abdelhamid]'s tone or communication style when he sent messages under his own email account versus when he composed messages for [his supervisor] to send." *Id.*

On February 18, 2022, after Mr. Abdelhamid had completed the communication skills courses, he attended a follow-up meeting with Mr. Nebbia. *Id.* at 2. Mr. Nebbia asked him to apologize for the email he had sent in January; Mr. Abdelhamid instead "requested information regarding the policy [he] had violated." *Id.* The pair met again on February 24, 2022, and Mr. Nebbia asked that Mr. Abdelhamid sign a Performance Improvement Plan ("PIP"). *Id.* at 2, 48-49. During that meeting, Mr. Nebbia told Mr. Abdelhamid that he "need[s] to follow the same culture as everyone else" and that "everyone needs to follow the culture of the Americans in the company." *Id.* at 25. Mr. Abdelhamid refused to sign the PIP, and Mr. Nebbia told him that failure to sign the PIP would result in his termination. *Id.* at 2. Mr. Abdelhamid asked to have another meeting at which Human Resources and his attorney could be present. *Id.* Human Resources sent Mr. Abdelhamid a calendar invitation for the afternoon of February 25, 2022. *Id.* at 51, 54.

On the morning of February 25, Mr. Abdelhamid declined the meeting invitation, stating:

> After yesterday's meeting with Fabio and Daniele, I was requested to sign a Performance Improvement Plan, and after a long discussion, I expressed my concern that I am suffering from an act of Intimidation & Discrimination, while being threatened to face Retaliation in case I showed any sign of disagreement to what's being imposed on me. . . . Therefore, I respectfully requested to stop the meeting, and expressed that if Mr. Nebbia wants to continue such discussion, it has to be in the attendance of an HR representative, my direct manager Mr. Chad Curran, and my personal lawyer. Consequently, I respectfully decline attending this proposed meeting, as it is such a short notice to have my legal representative present at the meeting.

*Id.* at 51. Later that day, Mr. Abdelhamid received notice that he had been terminated due to "unprofessional behavior . . . coupled with your refusal to attend a meeting today to discuss these concerns." *Id.* at 2-3, 54.

In May 2022, Mr. Abdelhamid filed a claim with the Equal Employment Opportunity Commission ("EEOC"), stating: "I believe I was discriminated against on the basis of my National Origin (Egyptian) and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964."  *Id.* at 3.  The EEOC declined to take action on the charge and informed Mr. Abdelhamid of his right to sue in May 2023.  *Id.* at 6.

## II.     Procedural History

Proceeding pro se, Mr. Abdelhamid filed this suit in August 2023, alleging discrimination on the basis of national origin (Count I) and retaliation (Count II).  ECF No. 1 ¶¶ 15-18.  In his complaint, Mr. Abdelhamid does not specify any particular statute under which he seeks relief; rather, he states that Lane discriminated and retaliated against him "in violation of federal law." *Id.*  Lane filed a motion to dismiss, arguing that the complaint fails to sufficiently state a claim for either discrimination or retaliation.  ECF No. 3.  Mr. Abdelhamid filed an opposition, ECF No. 6, Lane filed a reply, ECF No. 7, and Mr. Abdelhamid was permitted to file a surreply, ECF No. 8; *see id.* at 1 (granting leave to file).

On January 29, 2024, the court entered a *Fox-Neal* order advising Mr. Abdelhamid of his obligations under *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988), and *Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992).  ECF No. 9.  Because no such order had been issued before Mr. Abdelhamid filed his original opposition, the court provided the parties the opportunity to file amended briefs on Lane's motion to dismiss in light of the *Fox-Neal* order.  *Id.* at 1.  Mr. Abdelhamid filed an amended opposition, ECF No. 10, and Lane filed an amended reply, ECF No. 11.[4]

---

[4] The court has considered all the parties' filings in rendering its decision: Mr. Abdelhamid's complaint (ECF No. 1), opposition (ECF No. 6), surreply (ECF No. 8), and amended opposition (ECF No. 10); and Lane's motion to dismiss (ECF No. 3), reply (ECF No. 7), and amended reply (ECF No. 11).

### III.    Legal Standard

Lane moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).   Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   In evaluating a motion to dismiss under Rule 12(b)(6), the court will accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.   *Id.*   And when the plaintiff is pro se, as Mr. Abdelhamid is, the court will "liberally construe[]" his filings.   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see id.* ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Estelle*, 429 U.S. at 106)).   In assessing whether dismissal is warranted, a court considers all of the pro se litigant's filings, including attachments and any opposition filed. *Brown*, 789 F.3d at 151-52.

### IV.    Discussion

#### A.    National Origin Discrimination (Count I)

Mr. Abdelhamid alleges that Lane discriminated against him on the basis of his national origin.   Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1).   To prevail on a Title VII discrimination claim, a plaintiff must show that "(1) []he is a member of a protected class; (2) []he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."   *Wiley v. Glassman*, 511 F.3d 151, 156 (D.C. Cir. 2007) (quoting *Brown v.*

*Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)).   "[A]n employment discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss," *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011), but he must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).   Mr. Abdelhamid alleges—and Lane does not dispute—that he is a member of a protected class because he is Egyptian.  ECF No. 1-2, at 3; *see* ECF No. 3, at 12-15.   The parties disagree whether Mr. Abdelhamid suffered any adverse action and whether any such action gives rise to an inference of discrimination.

### 1.    Adverse action

The Supreme Court recently clarified the standard for an actionable adverse employment action in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024).  There, the Court explained that a plaintiff must simply allege "some harm respecting an identifiable term or condition of employment" to support a disparate treatment claim.  *Id.* at 974.  That holding is largely consistent with the D.C. Circuit's recent en banc decision in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022), in which the Circuit held that a plaintiff need only show some change with respect to the terms and conditions of employment (as opposed to a heightened "objectively tangible harm") to plead an adverse action.[5]  *Id.* at 874-75.  Although the parties briefed this case before *Muldrow* was decided, it applies.  *See Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 281 (1969) (explaining that courts must apply the law in effect at the time of decision); *see also*

---

[5] *See Muldrow*, 144 S. Ct. at 979-80 (Kavanaugh, J., concurring) ("As I see it and as the D.C. Circuit saw it [in *Chambers*]," "[t]he discrimination is harm.  The only question then is whether the relevant employment action changes the compensation, terms, conditions, or privileges of employment. . . .  I expect that the [majority's] approach and my preferred approach will land in the same place and lead to the same result.").

*Overseas Shipholding Grp., Inc. v. Skinner*, 767 F. Supp. 287, 291 (D.D.C. 1991) ("[T]he Court must review the agency's decision under the lens of current legal precedent.").

Mr. Abdelhamid raises four possible adverse actions: (1) Mr. Nebbia's criticism of his tone in a January 2022 email as "unacceptable"; (2) the subsequent requirement that he take two classes in communication skills; (3) Lane's insistence that he sign the PIP; and (4) his termination.  *See* ECF No. 10, at 1; ECF No. 1-2, at 3.  He describes this "sequence of actions" as "a continuum of discriminatory conduct that significantly altered the terms, conditions, and privileges of [his] employment, thereby constituting adverse employment actions."  ECF No. 10, at 1.  That is a legal conclusion that the court need not credit.  *Iqbal*, 556 U.S. at 678.  But giving Mr. Abdelhamid the benefit of all reasonable inferences, as the court must at this stage, *see id.*, the court concludes that he has plausibly alleged that these actions negatively affected the terms and conditions of his work environment.

The latter three actions can be dispensed with quickly: being required to take additional training, being required to sign a PIP, and being terminated all constitute "some harm" to the terms and conditions of Mr. Abdelhamid's employment.  *See Mitchell v. Garland*, No. 23-CV-2412, 2024 WL 3251217, at *4 (D.D.C. July 1, 2024) (holding that a requirement that an employee "complete a training that others were not required to complete" is an adverse employment action); *Anderson v. Amazon.com, Inc.*, No. 23-CV-8347, 2024 WL 2801986, at *10-11 (S.D.N.Y. May 31, 2024) (concluding that placement on a PIP is an adverse employment action

under *Muldrow*);[6] *Douglas v. Donovan*, 559 F.3d 549, 554 (D.C. Cir. 2009) (explaining that termination is an "obvious" adverse employment action).

With regard to Mr. Nebbia's comment about Mr. Abdelhamid's tone in a January 2022 email, it seems unlikely that a discrete incident of criticism, unconnected to an employee's protected trait, would constitute "some harm" to "an identifiable term or condition of employment." *Muldrow*, 144 S. Ct. at 974; *see Chambers*, 35 F.4th at 874 ("[N]ot everything that happens at the workplace affects an employee's 'terms, conditions, or privileges of employment.'"). However, because Mr. Nebbia followed up on his criticism by requiring Mr. Abdelhamid to complete courses to improve his communication skills—an action which did affect the terms and conditions of Mr. Abdelhamid's employment—the court views the criticism and the requirement that Mr. Abdelhamid complete additional training as part and parcel of the same adverse action.

## 2.    Inference of discrimination

The court next considers whether Mr. Abdelhamid has plausibly alleged that Lane took the above adverse employment actions "because of" his national origin, 42 U.S.C. § 2000e-2(a)(1), and concludes that he has.

---

[6] Mr. Abdelhamid contends that the PIP was "poorly conceived, too subjective to be of any value, and violated several of Lane's own policies and rules about how a PIP should be developed. . . . [I]t is clear that Lane had no intention of setting goals that could be objectively measured or achieved. The PIP was merely an effort to 'check a box.'" ECF No. 1-2, at 24. Construing Mr. Abdelhamid's filings liberally, *see Erickson*, 551 U.S. at 94, the court can draw the reasonable inference that being subjected to a PIP would impact the terms or conditions of Mr. Abdelhamid's employment by changing the baseline against which his performance would be measured (and, in Mr. Abdelhamid's view, changing it for the worse). *See Anderson*, 2024 WL 2801682, at *4, 10-11 (finding an adverse employment action where the plaintiff "was offered the choice between an exit package and the PIP," and the PIP "tarnish[ed] her permanent record [and] dampen[ed] her prospects of a promotion or raise").

*Email criticism and communication skills courses.*  Mr. Abdelhamid claims that Lane discriminated against him by making "baseless criticisms" of his January email and then imposing an "unwarranted requirement" that he take communication skills courses.  ECF No. 10, at 1.  While such allegations alone would be insufficient to survive a motion to dismiss, the court must look to Mr. Abdelhamid's filings as a whole.  *Brown*, 789 F.3d at 152.  As the exhibits to his complaint explain, Mr. Abdelhamid "would often 'ghostwrite' emails that his supervisors and colleagues dispatched verbatim to others."  ECF No. 1-2, at 23.  On at least one occasion, "Mr. Ciciotti received praise via email from Mr. Nebbia for the quality of an important communication ghostwritten by Mr. [Abdelhamid]."  *Id.*  "There was no material difference in Mr. [Abdelhamid]'s tone or communication style when he sent messages under his own email account versus when he composed messages for Mr. Ciciotti to send."  *Id.*  And yet, Mr. Abdelhamid "was only criticized for his tone or communication style when communicating in his own name."  *Id.*

A plaintiff may plausibly allege a causal relationship between his protected characteristic and his employer's adverse employment action "by showing 'that []he was treated differently from similarly situated employees who are not part of the protected class.'"  *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)).  Construing Mr. Abdelhamid's filings liberally, *see Erickson* 551 U.S. at 94, he has effectively alleged such comparators: those who sent his ghostwritten emails but were not required to undergo

training to improve their communication skills.[7]   The court must assume, at this stage of the litigation, that the facts Mr. Abdelhamid alleges are true.  *Iqbal*, 556 U.S. at 678.  If it is true that Mr. Abdelhamid sent materially similar communications under his own name and under the names of other employees who do not share his national origin, but "was only criticized for his tone or communication style when communicating in his own name," then that is sufficient "evidence that Mr. [Abdelhamid] was targeted because of who he [is], not because of what he said or how he said it," for purposes of surviving a motion to dismiss.  ECF No. 1-2, at 23.

   *PIP and termination.*   "Title VII claims may be proved by direct or circumstantial evidence."  *Oviedo v. Wash. Metro. Area Transit Auth.*, 299 F. Supp. 3d 50, 59 (D.D.C. 2018), *aff'd* 948 F.3d 386 (D.C. Cir. 2020).  Direct evidence of discrimination gives rise to an inference of discrimination sufficient for a *prima facie* case.  *See Townsend v. United States*, 236 F. Supp. 3d 280, 297 (D.D.C. 2017).  And if a plaintiff has done enough to establish a *prima facie* case, that is "certainly enough to survive a motion to dismiss."  *Harris*, 791 F.3d at 69.

   "A 'statement that itself shows . . . bias in the employment decision' qualifies as direct evidence" of discrimination.  *Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014) (quoting *Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011)).  Thus, telling an employee that she is

---

[7]  Mr. Abdelhamid does not explicitly state whether the colleagues who sent his ghostwritten emails, such as Mr. Ciciotti, shared his national origin.  *See* ECF No. 1-2, at 23. Usually, such an omission would be fatal to a plaintiff's claim.  *See, e.g.*, *SS & T, LLC v. Am. Univ.*, No. 19-CV-721, 2020 WL 1170288, at *5 (D.D.C. Mar. 11, 2020) (dismissing race discrimination claim where the plaintiffs failed to identify the race of their alleged comparators). However, Mr. Abdelhamid does allege that the fact that "[t]here was no material difference in [his] tone or communication style when he sent messages under his own email account versus when he composed messages for Mr. Ciciotti to send" is "strong evidence that [he] was targeted *because of who he was*, not because of what he said or how he said it."  ECF No. 1-2, at 23 (emphasis added). In light of Mr. Abdelhamid's pro se status and the requirement to liberally construe his filings, *see Erickson*, 551 U.S. at 94, the court can reasonably infer from the record that Mr. Ciciotti does not share Mr. Abdelhamid's national origin.

10

too old for a job is direct evidence of age discrimination; telling a Black employee he will not receive a raise because he is making enough "for a young [B]lack man" is direct evidence of race discrimination; and stating that a Hispanic woman was selected for a job over a white male applicant because doing so "helps our numbers" is direct evidence of race and gender discrimination. *See Stone v. Landis Const. Corp.*, 442 F. App'x 568, 569 (D.C. Cir. 2011) (per curiam) (age discrimination); *Robinson v. Red Coats, Inc.*, 31 F. Supp. 3d 201, 216 (D.D.C. 2014) (age discrimination); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576-77 (D.C. Cir. 2013) (race discrimination); *Pederson v. Mills*, 636 F. Supp. 2d 78, 83-84 (D.D.C. 2009) (race and gender discrimination).

"While courts have not precisely defined what constitutes direct evidence, it is clear that at a minimum, direct evidence does not include stray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself." *Oviedo*, 299 F. Supp. 3d at 59 (quoting *Hajjar-Nejad v. George Wash. Univ.*, 37 F. Supp. 3d 90, 125 (D.D.C. 2014)). The plaintiff must therefore show some "nexus between the stray remark and the adverse employment decision"—for example, by showing that the "remark was made by an individual with the power to influence Plaintiff's termination" or that the "remark was temporally close in time to the termination." *Ajisefinni v. KPMG LLP*, 17 F. Supp. 3d 28, 44 (D.D.C. 2014) (first quoting *Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F. Supp. 641, 665 (D.D.C. 1997)). "Consequently, motions to dismiss are regularly denied in this Circuit where the plaintiff alleges that the employer made a blatant discriminatory statement together with a plausible connection between that statement and an adverse employment decision." *Townsend*, 236 F. Supp. 3d at 301.

Reading the complaint together with its attached exhibits, Mr. Abdelhamid has alleged direct evidence that both Lane's requirement that he sign a PIP and its decision to terminate him were discriminatory.  On February 24, 2022, the day before he was terminated, Mr. Abdelhamid attended a meeting with Mr. Nebbia to discuss Lane's ongoing concerns with his communication style.  ECF No. 1-2, at 25.  Mr. Abdelhamid alleges that the pair had "some approximation of the following exchange":

> MR. [ABDELHAMID]: This is an international company, and some people here have different cultures or different point of view about what might be considered appropriate or inappropriate based on their background and individual perception.
>
> MR. NEBBIA: Look, I know you are different, but I need you to follow the same culture as everyone else.
>
> MR. [ABDELHAMID]: What do you mean by different?
>
> MR. NEBBIA: I'm not trying to say anything bad.  I'm not from here either.  I'm from Italy.  But everyone needs to follow the culture of the Americans in the company.

*Id.*

Just as telling an employee that she is too old for a job is direct evidence of age discrimination, telling an employee who is not from the United States that he is "different" and that he "needs to follow the culture of the Americans in the company" is direct evidence of national origin discrimination.  And Mr. Abdelhamid has alleged a sufficient nexus between Mr. Nebbia's comment and the alleged adverse employment actions.  *See Ajisefinni*, 17 F. Supp. 3d at 44.  Per Lane, Mr. Abdelhamid was within Mr. Nebbia's chain of supervision—Mr. Abdelhamid's direct supervisor, Mr. Ciciotti, reported to Mr. Nebbia.  ECF No. 1-2, at 16.  The court can therefore draw the reasonable inference in Mr. Abdelhamid's favor, as it must at the motion-to-dismiss stage, that Mr. Nebbia had "the power to influence Plaintiff's termination," as well as related employment decisions such as whether to place Mr. Abdelhamid on a PIP.  *Ajisefinni*, 17 F. Supp.

3d at 44.  Mr. Nebbia's comment was also temporally proximate to the adverse employment actions.  During the same February 24 meeting, Mr. Nebbia asked Mr. Abdelhamid to sign a PIP and told him that he would be terminated if he refused to sign it.  ECF No. 1-2, at 2. Mr. Abdelhamid refused to sign the PIP and was terminated the next day.  *Id.* at 2-3.

The court recognizes that Lane tells a very different story: that Lane had legitimate concerns with Mr. Abdelhamid's "level of self-awareness during conversations, limited interest in constructive feedback, written communications with his peers, [and] performance and attitude during subcontract negotiations;" that it asked him to sign a PIP for those reasons, and that it terminated him when he refused to do so.  ECF No. 3, at 1, 16; ECF No. 11, at 5.  But at the motion-to-dismiss stage, the court must assume that Mr. Abdelhamid's version of events is true and set aside Lane's conflicting narrative.  *See Twombly*, 550 U.S. at 555; *Townsend*, 236 F. Supp. 3d at 297.  The court therefore denies Lane's motion to dismiss as to Count I.

### B.    Retaliation (Count II)

As a threshold matter, the court must determine which federal law serves as the basis for Mr. Abdelhamid's retaliation claim.  His complaint states only that "Defendant retaliated against Plaintiff for engaging in protected activity, in violation of federal law."  ECF No. 1 ¶ 18.  The complaint incorporates by reference Mr. Abdelhamid's EEOC Charge, which alleges that Lane "retaliated against [him] for engaging in protected activity, in violation of Title VII of The Civil Rights Act of 1964."  ECF No. 1-2, at 3.  However, in his amended opposition, Mr. Abdelhamid seems to invoke both Title VII and the False Claims Act.  ECF No. 10, at 1-2.  In the introduction to his opposition, he states that the filing "underscore[es] the actionable claims within the ambit of Title VII of the Civil Rights Act of 1964."  *Id.* at 1.  Elsewhere in the opposition, he states:

> The Defendant's undue emphasis on a prior email . . . regarding a
> False Claim . . . is indicative of a retaliatory motive.  This is
> underscored by the legal precedent set in *Burlington Northern &*

> *Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), which
> elucidates that any action capable of deterring a reasonable worker
> from making or supporting a charge of discrimination constitutes
> retaliation under Title VII.    The Plaintiff's communication
> concerning a potential false claim, which the Defendant erroneously
> portrays as misconduct, was in fact a protected activity under the
> whistleblower    provisions . . . . Furthermore,    legal    precedents
> support the protection of whistleblowers against retaliation,
> particularly in cases involving false claims.  A notable example is
> []*United States ex rel. Lee v. Northern Adult Daily Health Care
> Center*,[] where the court affirmed that complaints about regulatory
> violations that aim to prevent fraud against the government are
> protected activities under the False Claims Act . . . .  This addition
> provides a legal basis for the argument that Plaintiff's actions were
> protected under whistleblower provisions.

*Id.* at 1-2.

Lane construes Mr. Abdelhamid's complaint as raising only a Title VII retaliation claim. ECF No. 11, at 7.  Lane argues that Mr. Abdelhamid did not raise a False Claims Act retaliation claim in his complaint and may not do so for the first time in his opposition.  *Id.*  Generally, a party may not amend his complaint through an opposition brief.  *See Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014).  However, the court must consider "a *pro se* litigant's complaint 'in light of' all filings," *Brown*, 789 F.3d at 152 (quoting *Richardson*, 193 F.3d at 548), including—in some cases—his opposition, *compare id.* at 151-52 (holding that the district court abused its discretion by failing to consider allegations raised by a pro se litigant in opposition to a motion to dismiss), *with Prewitt v. McDonough*, 633 F. Supp. 3d 195, 208-09 (D.D.C. 2022) (declining to consider claims raised by a pro se plaintiff for the first time in his opposition brief because "even pro se litigants . . . must comply with the Federal Rules of Civil Procedure" (quoting *Medina v. California*, No. 22-CV-341, 2022 WL 715180, at *1 (D.D.C. Mar. 9, 2022))). Here, the court evaluates Mr. Abdelhamid's retaliation claim under both the False Claims Act and Title VII and concludes that he has failed to allege the necessary facts to state a retaliation claim under either statute.

### 1.      False Claims Act retaliation

To state a claim for retaliation under the False Claims Act, a plaintiff must plausibly allege that (1) he engaged in protected activity; and (2) his employer retaliated against him because of that activity.  *Singletary v. Howard Univ.*, 939 F.3d 287, 295 (D.C. Cir. 2019).  The False Claims Act protects two types of activity: "'lawful acts done . . . in furtherance of an action under this section'—that is, steps taken antecedent to a False Claims Act proceeding," and "lawful acts done in furtherance of 'other efforts to stop 1 or more violations of' the False Claims Act."  *Id.* (quoting 31 U.S.C. § 3730(h)(1)).  An employee acts "in furtherance" of a False Claims Act proceeding if he "'investigat[es] matters that reasonably could lead to,' or have a 'distinct possibility' of leading to, a 'viable False Claims Act case.'"  *Id.* (quoting *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 66, 68-69 (D.C. Cir. 2008)).

Mr. Abdelhamid has not alleged any conduct by Lane that could reasonably lead to a viable False Claims Act case.  The False Claims Act penalizes those who knowingly defraud the government—for example, a company that fraudulently overcharges the government for goods, *see, e.g.*, *United States v. Bornstein*, 423 U.S. 303, 309 (1976), or a health clinic that provides the government false information to obtain Medicaid reimbursement, *see Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 183-87 (2016).  Because Mr. Abdelhamid's complaint and opposition do not themselves explain in what way Lane might have violated the False Claims Act, the court looks to Mr. Abdelhamid's November 2021 email, which is attached to his complaint. *See Abdelfattah*, 787 F.3d at 529 (considering exhibits because they were "filed by a pro se litigant and were intended to clarify the allegations in the complaint"); ECF No. 1-2, at 35-36.

Although the email is not entirely clear, Mr. Abdelhamid seems to contend in it that the provisions of a proposed settlement agreement between Lane and a subcontractor—both private parties—would expose Lane to liability under the False Claims Act.  *See id.* at 16, 34-36.

Mr. Abdelhamid does not allege that Lane sought to obtain any government benefit, form a contract with the government, or otherwise certify compliance with a statute or regulation. *See id.* at 35-36. Absent any allegations about engagement with the government, the court cannot reasonably conclude that a settlement agreement between two private parties—however flawed Mr. Abdelhamid believed that agreement to be—violated the False Claims Act. Thus, even assuming that Mr. Abdelhamid properly raised a retaliation claim under the False Claims Act in his pleadings and exhibits, such a claim cannot survive a motion to dismiss under Rule 12(b)(6).

## 2.    Title VII retaliation

Title VII "prohibits an employer from 'discriminat[ing] against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e-3(a)). To establish retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse action by his employer, and (3) a causal link connects the protected activity and the adverse action. *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). An activity is considered "protected" by Title VII if it "involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment." *Beyene v. Hilton Hotels Corp.*, 815 F. Supp. 2d 235, 247 (D.D.C. 2011), *aff'd* 573 F. App'x 1 (D.C. Cir. 2014) (quoting *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 91-92 (D.D.C. 2006)).

Mr. Abdelhamid seems to raise two possible protected activities for purposes of a retaliation claim: the November 2021 email setting forth his concerns with the proposed settlement and his statement on February 24, 2022 (which he summarized in a February 25 email to Human Resources) that he believed he was being subjected to intimidation, discrimination, and retaliation

16

when asked to sign the PIP. *See* ECF No. 10, at 1-3. The November email only discusses Mr. Abdelhamid's concerns with Lane's alleged exposure under the False Claims Act; he does not claim that his employer was discriminating against him or otherwise "oppose[] any practice" made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). Therefore, the November email does not qualify as protected activity for purposes of Title VII's retaliation provision.

In his February 25, 2022 email to Human Resources, Mr. Abdelhamid stated that he had met with his supervisor and Mr. Nebbia the day before, that he had been asked to sign a PIP, and that he had "expressed [his] concern that [he was] suffering from an act of Intimidation & Discrimination, while being threatened to face Retaliation in case [he] showed any sign of disagreement to what's being imposed." ECF No. 1-2, at 51-52. The question is whether this statement constitutes protected activity.

An employer cannot retaliate against an employee for protected activity unless it knows that the employee has engaged in that activity. *See Singletary*, 939 F.3d at 300 ("Common sense teaches that an employer cannot retaliate against conduct of which it was unaware."). As relevant here, an employee engages in protected activity under Title VII by "oppos[ing] any practice" made unlawful by the statute. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 56 (quoting 42 U.S.C. § 2000e-3(a)). An internal complaint like Mr. Abdelhamid's can constitute protected activity under Title VII when it "in some way allege[s] unlawful discrimination, not just frustrated ambition." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). But if there is "no evidence that Plaintiff was actually claiming discrimination on the basis of his [protected characteristic]"—if the defendant was not "on notice" that the plaintiff was opposing a practice made unlawful by Title VII—then there can be no retaliation claim. *Hajjar-Nejad*, 37 F. Supp. 3d at 146.

17

Lane argues that Mr. Abdelhamid's statement does not constitute protected activity because it alleges only general "discrimination," not discrimination on the basis of national origin. ECF No. 11, at 5-6.  Other courts in this district have concluded that "the bare use" of a word like "discrimination" or "bias" is "insufficient to create a protected activity." *Gibbs v. Wash. Metro. Area Transit Auth.*, 48 F. Supp. 3d 110, 133 n.8 (D.D.C. 2014); *see Hajjar-Nejad*, 37 F. Supp. 3d at 145-46.  *Clemmons v. Academy for Educational Development*, 107 F. Supp. 3d 100 (D.D.C. 2015), is particularly relevant.  There, the plaintiff lodged an internal complaint describing instances of "harassment," "discrimination," and "persecution," but made no mention of race or any other protected characteristic.  *Id.* at 129-30.  Because the plaintiff could not show "that she alleged unlawful race discrimination, and not simply unprofessional conduct," the court concluded that she had not engaged in protected activity.  *Id.* at 130.  As the court explained, "the case law of this Court makes clear that the use of such words, untethered to an allegation that the conduct occurred because of membership in a protected class, is not enough to transform a workplace complaint into protected activity."  *Id.*; *see Hunter v. District of Columbia*, 905 F. Supp. 2d 364, 379 (D.D.C. 2012), *aff'd* No. 13-7003, 2013 WL 5610262 (D.C. Cir. Sept. 27, 2013) ("[E]ven though Hunter uses the word 'discriminatory,' the substance of the letter does not allege any discrimination on the basis of race, color, religion, or national origin.").

Like the statements at issue in the above cases, Mr. Abdelhamid's complaint about "Intimidation & Discrimination" and "Retaliation" was not tied to his national origin.  In the absence of that critical connection, the court cannot conclude that Mr. Abdelhamid engaged in protected activity.  *See Hajjar-Nejad*, 37 F. Supp. 3d at 145-46; *Clemmons*, 107 F. Supp. 3d at 130; *Hunter*, 905 F. Supp. 2d at 379.  Mr. Abdelhamid may have honestly believed that Lane's actions were motivated by national origin discrimination, but "absent any indication that []he

communicated this belief to [Lane]," he cannot proceed with a retaliation claim. *Clemmons*, 107 F. Supp. 3d at 130. Because Mr. Abdelhamid has not sufficiently alleged that he engaged in protected activity for purposes of a Title VII retaliation claim, the court grants Lane's motion to dismiss as to Count II.

### V.    Conclusion

For the foregoing reasons, the court **DENIES** Defendant Lane Construction Corporation's Motion to Dismiss, ECF No. 3, as it pertains to Count I and **GRANTS** the motion as to Count II. Defendant shall file an answer to Plaintiff's complaint on or before August 26, 2024.

**SO ORDERED**.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: August 12, 2024