UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Osama Abdelhamid<br><br>Plaintiff,<br><br>v.<br><br>The Lane Construction Corporation<br><br>Defendant. | Civil Action No. 1:23-cv-02472-LLA |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND EXPENSES**

Plaintiff Osama Abdelhamid, proceeding pro se, respectfully opposes Defendant's Motion for Attorney's Fees and Expenses (ECF No. 42) and supporting memorandum (ECF No. 42-1). Although Rule 37(a)(5)(B) contains a presumption of fee-shifting when a motion to compel is denied, that presumption does not apply where the motion was substantially justified or where other circumstances make an award unjust.

Plaintiff's Motion to Compel (ECF No. 34) was a good-faith effort to enforce the Court's July 29, 2025 production order (ECF No. 31) and to obtain a minimal, objective confirmation of completeness and usability—after Defendant: (1) produced a massive native-format repository after excluding entire categories of folders/files as "outside scope," (2) did so on an accelerated schedule, and (3) had already made definitive "no more exist" representations regarding organizational charts that were later undermined by subsequent production following a later search of a core storage repository.

Defendant's fee request seeks to punish a genuine discovery dispute and to convert Rule 37 into a weapon against reasonable attempts to verify compliance. The Court should deny fees.

## INTRODUCTION

Defendant's motion attempts to reframe a reasonable, record-based discovery dispute as "frivolous" simply because Plaintiff did not prevail. But Rule 37 does not award fees as a prize for winning; it shifts fees only

RECEIVED
JAN 9 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

when the losing motion lacked substantial justification and when no other equitable circumstances make an award unjust.

Plaintiff's motion was grounded in (a) a Court order requiring production of specific categories, including organizational charts (ECF No. 31), (b) Defendant's own production choices (native-format repositories with undisclosed exclusions/culling), and (c) objective completeness/usability concerns apparent from the production structure itself and from Defendant's shifting positions about what existed and where it was searched.

Plaintiff conferred with Defendant's counsel before filing, sought limited relief aimed at verification and usability, and filed promptly in response to late-stage productions. That is the opposite of sanctionable conduct.

## GOVERNING STANDARD

Rule 37(a)(5)(B) provides that if a motion to compel is denied, the Court must require the movant to pay the opponent's reasonable expenses unless:

1. the motion was substantially justified; or
2. other circumstances make an award unjust.

"Substantially justified" does not mean "ultimately correct." It means the position had a reasonable basis in law and fact such that reasonable people could disagree.

## ARGUMENT

### I. Plaintiff's Motion to Compel Was Substantially Justified.

Plaintiff's motion was not a fishing expedition or a request for "better organization." It was a targeted attempt to confirm whether Defendant's production complied with the Court's order and whether the "as kept" native repositories were reasonably usable under the compressed schedule.

#### A. The organizational-chart dispute alone made the motion objectively reasonable.

The Court's July 29, 2025, Order expressly required Lane to "produce any organizational charts for projects on which Mr. Abdelhamid worked between 2019 and 2022" (Doc. 31).

Defendant's discovery positions created a legitimate completeness concern:

- Defendant repeatedly took the position that no other organizational charts existed beyond what it had produced.
- Defendant later produced additional organizational charts after a subsequent search of a storage repository (described as a "storage cloud"), undermining the reliability of earlier categorical representations.

In a case where reporting lines and decision-makers are central to retaliation/discrimination claims, organizational charts are not "nice to have." They are foundational. When a producing party first insists no additional versions exist and later produces more from a repository that should have been searched at the outset, a reasonable litigant has a legitimate basis to seek Court assistance to verify completeness.

**B. The production's folder structure and undisclosed exclusions created reasonable completeness and usability concerns.**

Defendant produced large native-format repositories and simultaneously admits it excluded/cut entire categories of folders and files as "outside scope." That choice created an objective verification problem: Plaintiff could not tell whether apparent gaps reflected (i) "does not exist," (ii) "exists but was excluded as out-of-scope," or (iii) "exists but was not located/searched."

The production structure itself raised concrete red flags. By way of example (based on the production file tree as received):

- The root directory presents a limited set of top-level folders (e.g., Aaron Enterprises, Change Orders 9146, ConSeg JV, Contract 9146), with no accompanying production map identifying what the remaining expected components would be or why they were absent.
- Within subcontractor folders, the structure appears truncated and inconsistent (e.g., folder ranges missing without explanation; empty exhibit folders; missing expected exhibits such as "Exhibits B and C" within an "Agreements" tree).
- In the "Contract 9146" tree, only a small subset of folder numbers appears (e.g., 00, 01, and 08), with other folder ranges absent without a production note indicating whether those categories never existed, were out-of-scope, or were excluded.

- Certain completion-related documents appear dated late in the project (e.g., certificates of substantial completion dated December 2024), yet there is no confirmation whether final completion documentation exists, has not yet issued, or was excluded.

These are not cosmetic complaints. They go to whether the production is reasonably usable and whether Plaintiff can verify compliance with an order that required production of complete contract sets (prime contract and subcontracts, including executed amendments and change orders) and related categories.

Given those objective gaps, Plaintiff's request for limited relief—such as (i) a minimal "map" identifying what categories were excluded and on what basis, and/or (ii) a certification describing where and how Defendant searched and what it excluded—was substantially justified.

**C. Plaintiff did not seek to "expand" discovery; he sought verification and usability needed to enforce the Court's order.**

Defendant argues Plaintiff demanded an "index" and "search certification" to impose obligations beyond Rule 34. But Plaintiff's motion sought practical verification tools because Defendant's production format and undisclosed culling made it impossible to confirm whether the ordered materials were fully produced.

Even if Rule 34 does not automatically require an index, nothing in Rule 37 prevents a party from seeking targeted relief when a production's structure and undisclosed exclusions create a genuine dispute about completeness and usability—especially where the producing party has already made categorical "no more exist" representations later contradicted by subsequent production.

**D. Plaintiff's follow-up requests were substantially justified and were not "already denied" in the way Defendant suggests.**

Defendant characterizes certain follow-up requests (e.g., limited communications tied to HR and a specific individual's involvement) as "already denied." Plaintiff respectfully submits:

1. The follow-up requests in ECF No. 34 were triggered by late-stage productions, including Plaintiff's full mailbox production delivered at the eleventh hour of discovery, leaving no practical ability to identify and raise those targeted items earlier.

2. The requests were narrow and tethered to what Plaintiff learned from the produced documents—not open-ended re-litigation of broad categories.

3. Plaintiff did not sit on these issues; he conferred and then moved promptly after the late production made the follow-ups concrete.

To the extent the Court ultimately concluded (in its October 17, 2025 order, ECF No. 38) that some of these items were previously denied, that goes to the Court's discretionary merits ruling—not to whether Plaintiff's position was unreasonable at the time he filed, based on newly reviewed materials and late production timing.

## II. The Court's Denial of the Motion Does Not Mean the Motion Was Unjustified

Defendant's fee request is premised on the mistaken idea that "denied" equals "unjustified." Rule 37 draws a different line.

In denying Plaintiff's motion (ECF No. 38), the Court addressed, among other points:

- Defendant's "as kept" native-format production;
- Defendant's Bates overlay and the Court's conclusion that Plaintiff did not sufficiently explain why the production remained unusable;
- Defendant's description of excluded categories as outside the scope of the Court's July 29 order; and
- the Court's view that certain requested communications had already been denied as "additional relief."

Plaintiff accepts the Court's ruling. But the fee question is different: whether Plaintiff had a reasonable basis to seek verification and usability relief given the factual record at the time.

Here, Plaintiff's motion rested on genuine, objective concerns:

- Defendant admitted excluding entire categories before producing;
- the production structure itself contained unexplained gaps and inconsistencies affecting completeness verification;

- Defendant's organizational-chart representations were later undermined by subsequent production after further searching.

A reasonable litigant could believe Court assistance was needed to ensure compliance with a production order and to make an enormous "native dump" usable on a short schedule. That is substantial justification.

**CONCLUSION**

Plaintiff respectfully requests that the Court deny Defendant's Motion for Attorney's Fees and Expenses (ECF No. 42) in full.

Dated January 09, 2026

Respectfully submitted,

Osama Abdelhamid
Plaintiff, Pro Se
3809 Mode Street
Fairfax, Virginia 22031
o.karam@hotmail.com
(571) 999-3454

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of January, 2026, the foregoing document(s) were submitted to the Clerk of Court for filing in the above-captioned matter. Upon docketing, the CM/ECF system will send a Notice of Electronic Filing (NEF) to CM/ECF-participating counsel of record. In addition, on this date I caused a true and correct copy to be served by electronic mail upon counsel for Defendant at:

Christopher W. Mahoney

Barclay Damon LLP

CMahoney@barclaydamon.com

1742 N Street, N.W.

Washington, DC 20036

Respectfully submitted,

Osama Abdelhamid (pro se)

3809 Mode St.

Fairfax, VA 22031

(571) 999-3454

o.karam@hotmail.com